UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TERENCE D. MACLIN, JR.,

    Plaintiff,

v.

BRANDON HORTON, MARTIN H. FLEMING, BRADLEY EVERSON, STEVEN JOHNSON, and MILWAUKEE SECURE DETENTION FACILITY,

    Defendants.

Case No. 24-CV-1025-JPS

ORDER

---

Plaintiff Terence D. Maclin, Jr., an inmate confined at the Milwaukee Secure Detention Facility, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, addresses his motion for subpoena for video footage, and screens his complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 27, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $19.26. ECF No. 7. Plaintiff paid that fee on September 13, 2024. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings this case against Defendants Brandon Horton ("Horton"), Martin H. Fleming ("Fleming"), Bradley Everson ("Everson"), Steven Johnson ("Johnson"), and Milwaukee Secure Detention Facility. ECF No. 1 at 1. On April 9, 2024, Officer Banks and Officer Oliver took Plaintiff out of his cell because he had been complaining to staff about chest pain. *Id.* at 2. Plaintiff has high blood pressure, and he knew his levels were elevated. *Id.* The officers escorted Plaintiff to the HSU room to see a doctor. *Id.* At 10:00 a.m., Plaintiff's vitals were taken and his blood pressure was 175/104. *Id.* At 11:37 a.m., Officer Banks escorted Plaintiff to the law library. Banks told Plaintiff that he would not tether Plaintiff down so that he could stand up and type. *Id.* at 2–3. Plaintiff was in the restricted housing unit, which normally requires inmates to be handcuffed and tethered down in the law library. *Id.* at 3. Officer Banks left the door unsecured and told Plaintiff to stick his head out when he was done. *Id.*

Once finished at the law library, Plaintiff followed Banks' directives. *Id.* However, Banks was not outside the law library when Plaintiff looked. *Id.* Horton was in the officer bubble at the time and saw Plaintiff come out.

*Id.* Horton tried to tether Plaintiff down. *Id.* Plaintiff tried telling Horton the instructions that Banks had given him. *Id.* Plaintiff also told Horton that he did not want Horton touching him because Horton had been threatening him all week. *Id.* Plaintiff did not trust Horton. *Id.* Horton left and came back with Fleming. *Id.* With his back to both officers, Plaintiff repeated what Banks had told him. *Id.* While Plaintiff was speaking, Horton choked him from behind and put Plaintiff in a head lock. Plaintiff was weak as a result of his blood pressure. *Id.* Plaintiff had no energy so he threw himself to the ground so that Horton could see that Plaintiff was not resisting. *Id.*

Horton then proceeded to put one hand on Plaintiff's chin and another on his forehead. *Id.* at 5. Horton pushed Plaintiff's head into the ground while saying, "You think it's a game." *Id.* Fleming had to tap Horton on his arm, as if to say that Horton was doing too much because Plaintiff was not resisting. *Id.* When Plaintiff looked up, Captain Gloudemans, Officer Banks, and Officer Oliver were all standing at the door shocked as to what they had witnessed. *Id.* Plaintiff never resisted or posed a threat because he was handcuffed and had no energy. Gloudemans, Oliver, Banks, and Fleming escorted Plaintiff back to his cell. *Id.* Fleming was having a hard time taking the handcuffs off Plaintiff, so Gloudemans knocked Plaintiff's folder out of his hand and yanked his arm through the trap door. *Id.* As a result, Plaintiff's skin was torn off his forearms. *Id.*

No pictures were taken and no medical staff were called to treat Plaintiff's injuries. *Id.* Plaintiff started feeling dizzy and began crying because he could not believe he had been attacked. *Id.* Plaintiff pushed his medical button and told them he was having chest pains and that his forearms were bleeding. *Id.* Medical staff did not respond until 4:01 p.m.

Plaintiff has written to the Deputy Warden, the Security Director, and the ICE department with all his requests being ignored. *Id.*

### 2.3 Analysis

First, Plaintiff can proceed on an excessive force claim against Horton. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When a correctional officer is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat the officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Here, Plaintiff alleges that Horton choked and pushed his head into the ground when Plaintiff was not resisting. Taking Plaintiff's allegations as true, Horton's conduct would constitute excessive force. As such, Plaintiff may proceed on an Eighth Amendment claim against Horton for excessive force.

Second, Plaintiff may proceed on a failure to intervene claim against Fleming. A prison official may be liable for the failure to intervene if he or she knew about a constitutional violation and had the ability to intervene, but failed to do so "with deliberate or reckless disregard for the plaintiff's constitutional rights." *Koutnik v. Brown*, 351 F. Supp. 2d 871, 876 (W.D. Wis. 2004) (citing *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004)). Given that Plaintiff alleges that Fleming stood by and failed to protect Plaintiff from the excessive force used upon him, it is reasonable, at this early stage, to

infer that Fleming acted with deliberate indifference to Plaintiff's constitutional rights. As such, the Court will allow Plaintiff to proceed on a failure to intervene claim against Fleming.

Plaintiff does not, however, state a claim against the remaining defendants. As to the Milwaukee Secure Detention Facility, a prison is not a "person" for the purposes of § 1983 and therefore is not a suable entity. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[T]he district court was correct that, in listing the Knox County Jail as the sole defendant, [Plaintiff] named a non-suable entity."). As to Everson and Johnson, Plaintiff does not allege that they participated in the constitutional violation. Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell,* 492 Fed. Appx. 654, 660 (7th Cir. 2012)). As such, the Court will dismiss these defendants for the failure to state a claim against them.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment excessive force claim against Horton.

**Claim Two:** Eighth Amendment failure to intervene claim against Fleming.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Finally, the Court will deny Plaintiff's motion for subpoena for video footage as premature. Defendants' obligation to preserve evidence likely was triggered by Plaintiff filing his inmate complaint regarding this incident, and in any event, would certainly be triggered when receiving this Order. *See Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting that a party's duty to preserve evidence is triggered when it knows or should have known that litigation is imminent). Plaintiff may request video footage from Defendants in the normal course of discovery.

In the event that Plaintiff is unable to receive certain evidence in the normal course of discovery, he may return to the Court for assistance in the form of a motion to compel discovery or to request a subpoena for a non-party, if necessary. For future reference, the Court provides the following information. Under Federal Rule of Civil Procedure 45, a party may seek to compel a non-party for the production of documents, electronically stored information, or tangible items, among other things. Fed. R. Civ. P. 45(c)(2). A person wishing to issue a subpoena must ask the Clerk of Court to provide him with a subpoena form; the Clerk of Court will sign a blank subpoena form and deliver it to the requesting party. Fed. R. Civ. P. 45(a)(3).

The requesting party must then complete the form and make arrangements and pay for someone to serve the subpoena on the individual whom he wants to testify. Fed. R. Civ. P. 45(a)(3), (b). Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for one day's attendance and the mileage allowed by law. Fed. R. Civ. P. 45(b)(1).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for subpoena for video footage, ECF No. 6, be and the same is hereby **DENIED as premature**;

**IT IS FURTHER ORDERED** that Defendants Everson, Johnson, and Milwaukee Secure Detention Facility be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Horton and Fleming**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed.

Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $330.74 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 18th day of September, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

> Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.
>
> Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:
>
> > Office of the Clerk
> > United States District Court
> > Eastern District of Wisconsin
> > 362 United States Courthouse
> > 517 E. Wisconsin Avenue
> > Milwaukee, Wisconsin 53202

> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.